IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| **MIKE DAVIS,** | ) | |
| | ) | |
| Plaintiff, | ) | **Case No: 4:19-cv-686** |
| | ) | |
| v. | ) | **Removal from** |
| | ) | **Jackson County Circuit Court** |
| **RENNY PALUMBO, et al.,** | ) | **Case No.: 1816-CV12118** |
| | ) | **Division 15** |
| Defendants. | ) | |

## DEFENDANTS' NOTICE OF REMOVAL

Defendants CardConnect, LLC, CardConnect, Corp., First Data Corporation, Fiserv, Inc., and individual Defendant, Renny Palumbo, by and through their attorneys, remove the above-referenced lawsuit filed by Plaintiff Mike Davis ("Plaintiff") in the Circuit Court of Jackson County, Missouri. For its Notice of Removal, Defendants state as follows:

1. On May 10, 2018, Plaintiff filed a 32-page, 161-paragraph, 6-count Petition for Damages and Declaratory Relief ("Initial Petition") against corporate Defendants CardConnect, LLC, CardConnect, Corp., First Data Corporation, and individual Defendant, Renny Palumbo, in the Circuit Court of Jackson County, Missouri, styled *Mike Davis v. Renny Palumbo, et al.,* Case No. 1816-CV12118 ("State Court Action").

2. Plaintiff's Initial Petition alleged claims against the corporate Defendants for equitable disgorgement, underpayment of wages, alleged violations of the Missouri Service Letter Statute, MO Rev Stat § 290.110 (2019), and the Kansas Statutory Employee Protection Act. Plaintiff's petition also alleged a single claim against the individual Defendant Renny Palumbo for

defamation premised on unspecified defamatory statements that were allegedly made by Defendant Palumbo.

3. On July 30, 2019, Plaintiff filed his First Amended Petition, which for the first time, added Defendant Fiserv as a new corporate defendant and new party to this action. In addition to adding new Defendant Fiserv, Inc. ("Fiserv"), Plaintiff's First Amended Petition also added a substantial number of new allegations against the corporate Defendants, as well as additional causes of action, and now constitutes 68 pages, 307 paragraphs, and 10 counts.

4. A copy of the Civil Cover Sheet completed in connection with this case is also attached as **Exhibit 1**.

5. Pursuant to 28 U.S.C. § 1446(a), a copy of the State Court Action, along with all process, pleadings, and orders filed in the Circuit Court of Jackson County, Missouri prior to this removal, is attached as **Exhibit 2**.

6. Counsel for Fiserv accepted service of the First Amended Petition via email on its behalf on August 28, 2019. A copy of the acceptance of service is attached as **Exhibit 3**.

7. Apart from the filing and service of the Initial Petition, a Motion to Dismiss (filed by Defendants CardConnect, LLC, CardConnect, Corp., First Data Corporation, and Palumbo) the Defendants named in the Initial Petition, numerous Court Orders related to Plaintiff's delay in moving this matter forward, and Plaintiff's notice of filing and serving the First Amended Petition, no further substantive proceedings have occurred in the State Court Action.

8. As more fully set forth below, this case is properly removed to this Court because it has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and § 1441, and because Defendants have satisfied the procedural requirements for removal pursuant to 28 U.S.C. § 1446(b).

## I. BASIS FOR REMOVAL

9. As set forth more fully below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Defendants have satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) as this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs.

### A. The Amount in Controversy is Met

10. Pursuant to 28 U.S.C. § 1332(a)(1), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum of the value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states . . ." 28 U.S.C. § 1332(a)(1).

11. When determining the amount-in-controversy for purposes of diversity jurisdiction, both punitive damages and attorney's fees are included. *Allison v. Sec. & Benefit Life Ins. Co.,* 980 F.2d 1213, 125 (8th Cir. 1992) (holding that punitive damages are included in determining the amount in controversy); *Capital Indem. Corp. v. Miles,* 978 F.2d 437, 438 (8th Cir. 1992) (holding that attorneys' fees are included in determining the amount in controversy).

12. The amount in controversy is defined by what the stakes of litigation could be based on the relief plaintiff demands, not on a forecast of the amount a plaintiff is likely to recover. *Kopp v. Kopp,* 280 F.3d 883, 885 (8th Cir. 2002); *Rowling v, NRM Corp.,* No. 1:05CV81 FRB, 2005 U.S. Dist. LEXIS 26189, at *8-9 (E.D. Mo. Aug 2, 2005). Moreover, if plaintiff has articulated a legal basis for a potential award of damages which might satisfy the jurisdictional amount, then federal jurisdiction exists. *Kopp,* 280 F.3d at 885. ("The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and

3
Case 4:19-cv-00686-RK   Document 1   Filed 08/29/19   Page 3 of 18

proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000.").

13. Here, Plaintiff has alleged that he unjustly enriched Defendants in excess of $1 million. First Am. Pet. at ¶¶ 188, 199.

14. Additionally, Plaintiff alleges that he was entitled to **at least** 30% of this amount (*i.e*. $300,000.00) **plus** an alleged unpaid salary of $60,000.00. First Am. Pet. at ¶ 206.

15. Thus, Plaintiff has plainly alleged damages well in excess of the $75,000.00 jurisdictional threshold amount required to establish diversity jurisdiction. 28 U.S.C. § 1332(a).

### B. Complete Diversity of Citizenship Exists Between Plaintiff and all Properly Joined Defendants.

16. Plaintiff has alleged that he is, and at all times relevant, has been a resident of resident of Lee's Summit, Jackson County, Missouri.

17. Defendant Fiserv, Inc. is a Wisconsin Corporation, whose principal place of business is in Brookfield, Wisconsin.

18. Defendant CardConnect, LLC is a Delaware Limited Liability Company, whose sole member, FDS Holdings, Inc. is also a Delaware corporation. Defendant CardConnect, LLC's principal place of business is in King of Prussia, Pennsylvania.

19. Defendant CardConnect Corp. merged into CardConnect, LLC on September 29, 2017 and is no longer a legal entity.

20. Defendant First Data Corporation is a Delaware Corporation, whose principal place of business is in Atlanta, Georgia.

21. None of the corporate Defendants is incorporated in Missouri and none of the corporate Defendants has a principal place of business in Missouri.

22. Thus, pursuant to 28 U.S.C. § 1332(c)(1), each of the corporate Defendants is diverse, as none of them is a citizen of the State of Missouri.

23. The sole individual Defendant, Renny Palumbo, was a citizen of Missouri at the time the Initial Petition was filed in the State Court Action; however, Defendant Palumbo moved to Illinois in May 2019 and was a citizen of Illinois at the time the First Amended Petition was filed. See Declaration of Renny Palumbo, attached as **Exhibit 4**.

24. As set forth more fully below, the Court may disregard the citizenship of Defendant Palumbo because he was fraudulently *joined*, as well as fraudulently *misjoined* to this action.

25. Moreover, to the extent this Court does not find that Defendant Palumbo was either fraudulently *joined* or fraudulently *misjoined,* he was a diverse Defendant, pursuant to 28 USC § 1332(c)(1), at the time the First Amended Petition was filed against newly added party – Defendant Fiserv.

### 1. The Court May Disregard the Citizenship of Defendant Palumbo Because He was Fraudulently Misjoined.

26. Defendant Palumbo was fraudulently *misjoined* in this action and, thus, his citizenship should be disregarded.

27. As the Eighth Circuit has explained, "[f]raudulent misjoinder 'occurs when a plaintiff sues a diverse defendant in state court and joins a viable claim involving a nondiverse party, or a resident defendant, even though the plaintiff has no procedural basis to join them in one action because the claims bear no relation to each other.'" *In re Prempro Prods. Liab. Litig.,* 591 F.3d 613, 620 (8th Cir. 2010) (quoting Ronald A. Parsons, Jr., *Should the Eight Circuit Recognize Procedural Misjoinder?,* 53 S.D. L. Rev. 52, 57 (2008)); *see also Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000)).

5

28. Under the doctrine of fraudulent misjoinder, federal diversity jurisdiction exists "where diversity is destroyed only through misjoinder of parties." *Asher v. Minnesota Mining & Mfg. Co.,* No. 6:04-522-DCR, 2005 WL 1593941, at *7 (E.D. Ky. June 30, 3005). The fraudulent misjoinder doctrine applies where plaintiffs' claims are "egregious[ly]" misjoined to defeat federal jurisdiction and "have no real connection" to one another. *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot,* 204 F.3d 1069 (11th Cir. 2000).

29. Federal courts throughout the country have recognized the validity of the fraudulent misjoinder doctrine. *See, e.g., In re Benjamin Moore Co.,* 318 F.3d 626, 630–31 (5th Cir. 2002) (noting "the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction."); *Greene v. Wyeth,* 344 F. Supp. 2d 674, 684–85 (D. Nev. 2004) ("[T]his Court agrees with the Fifth and Eleventh Circuits that the [fraudulent misjoinder] rule is a logical extension of the established precedent that a plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction in federal court.") (internal citations omitted).

30. Courts will identify fraudulent misjoinder where the claims alleged against the non-diverse defendant do not satisfy the standard for party joinder under Rule 20 of the Federal Rules of Civil Procedure. *See Robinson v. Pfizer, Inc.,* No. 4:16-CV-436 (CEJ), 2016 WL 1721143, at *3 (E.D. Mo. April 29, 2016) (analyzing fraudulent misjoinder argument by determining whether the plaintiffs' claims were properly joined under Rule 20).

31. Federal Rule of Civil Procedure 20(a) permits joinder of defendants when there is both "(1) a claim for relief asserting joint, several, or alternative liability *and* arising from the same

transaction, occurrence, or series of transactions and occurrences, *and* (2) a common question of law or fact." Fed. R. Civ. P. 20(a) (emphasis added).

32. When these requirements are not met, the plaintiff's joinder of claims is procedurally inappropriate, and the Court may sever the unrelated claims. *See, e.g., Bell v. Dunklin County Jail Adm'r*, No. 1:11-CV-104-SNJL, 2011 WL 2671928, at *3 (E.D. Mo. July 8, 2011) (severing the plaintiff's claims against twenty different defendants where the claims arose out of "wholly unrelated events"); *Roberts v. Davis,* No. 4:11CV2007 JAR, 2011 WL 6217047, at *2–3 (E.D. Mo. Dec. 14, 2011) (severing and dismissing plaintiff's "wholly unrelated" claims for medical mistreatment from claims for assault); *McCrary v. Reed,* No. 1:15-CV-136-SNLJ, 2015 WL 5480216, at *3 (E.D. Mo. Sept. 17, 2015) (severing and dismissing plaintiff's claims against certain defendants that involved "unrelated events" and "distinctly different" injuries); *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 832–33 (1989) ("Rule 21 invests district courts with authority to dismiss a dispensable party whose presence spoils statutory jurisdiction.").

33. Rule 20 does not contain any requirements regarding the plaintiff's intentions. *See Curry v. Marines,* No. 3:09-CV-999-S, 2010 WL 1744597, at *1 (W.D. Ky. April 28, 2010) (stating that "no fraud or improper motive need be shown"). Accordingly, the Court may adopt the fraudulent misjoinder doctrine without finding that Plaintiff acted in bad faith.

34. Here, Defendant Palumbo is improperly joined because Plaintiff's claims against him do not arise out of the same "transaction, occurrence, or series of transactions or occurrences" as the claims against the other Defendants. *See* Fed. R. Civ. P. 20(a)(2).

35. The basis of Plaintiff's claim against Defendant Palumbo is premised on alleged defamatory statements made by Defendant Palumbo and has nothing to do with the crux of

7

Case 4:19-cv-00686-RK   Document 1   Filed 08/29/19   Page 7 of 18

Plaintiff's complaint against the corporate Defendants which is based on failure to pay wages and commissions allegedly earned by Plaintiff.

36. Moreover, the injuries alleged to have occurred as a result of Defendant Palumbo's alleged defamatory remarks are unrelated to the financial injuries arising from the claims against the corporate Defendants. While the one count against Defendant Palumbo for defamation seeks compensatory damages for alleged damage to Plaintiff's reputation, the other nine counts of Plaintiff's First Amended Petition seek monetary damages against the corporate Defendants for lost wages and declaratory relief requiring certain commission payments be made to Plaintiff.

37. The claims against Defendant Palumbo would require a set of evidence focused on alleged statements made by Defendant Palumbo, whether they were privileged, whether they were true or false, and what damages, if any, those statements caused Plaintiff.

38. The claims against the corporate Defendants would be premised on evidence *entirely different* from the evidence relevant to Plaintiff's defamation claim against Defendant Palumbo.

39. Fundamentally, any liability that may be found against Defendant Palumbo for defamation would not be a basis for imposing any liability against the corporate Defendants for any of the other nine counts in Plaintiff's First Amended Petition.

40. As numerous courts have routinely held under similar fact patterns, the necessary remedy for misjoinder is to sever or dismiss claims against the non-diverse defendant pursuant to Federal Rules of Civil Procedure 20 and 21, permitting Plaintiff's claims against the non-diverse defendant to proceed separately in state court. *See, e.g., See Harbison v. Rich Gullet & Sons, Inc.,* No. 4:13-CV-1138 SPM, 2014 WL 5483569, at *3 (E.D. Mo. Oct. 29, 2014) (dismissing claims against dispensable, non-diverse party); *Sutton v. Davol, Inc.,* 251 F.R.D. 500, 506 (E.D. Cal.

2008) (severing and remanding fraudulently misjoined medical negligence claims and retaining jurisdiction over product liability claims); *Palermo v. Letourneau Techs., Inc.,* 542 F. Supp. 2d 499, 524 (S.D. Miss. 2008) (severing and remanding fraudulently joined medical negligence claims and retaining jurisdiction over employment claims).

### 2. The Court May Disregard the Citizenship of Defendant Palumbo Because He was Fraudulently Joined.

41. In addition to being fraudulently *misjoined* in this action, Plaintiff's claims against Defendant Palumbo were also fraudulently *joined*. Thus, the Court may also disregard Defendant Palumbo's citizenship under the fraudulent joinder doctrine.

42. Fraudulent *joinder* is different from fraudulent *misjoinder*. As discussed above, fraudulent *misjoinder* focuses on whether the Plaintiff appropriately joined the claims against the non-diverse Defendant with those against the diverse Defendants. Fraudulent joinder, on the hand, focuses on the validity of the claims against the non-diverse Defendant.

43. It is axiomatic that a defendant's right of removal "cannot be defeated by a fraudulent joinder of a resident defendant" having no real connection with the controversy. *Simpson v. Thomure,* 484 F.3d 1081, 1083 (8th Cir. 2007) (quoting *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921)). A defendant is fraudulently joined "[w]here applicable state precedent precludes the existence of a cause of action against a defendant." *Filla v. Norfolk Southern Railway Co.,* 336 F.3d 806, 809 (8th Cir. 2003). "[I]t is well established that if it is clear under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.,* 556 F.2d 400, 406 (8th Cir. 2007)). Here, it is clear on the face of the Petition that there is no reasonable basis for Plaintiff's defamation claim against Defendant Palumbo.

44. Plaintiff's claim of defamation cannot withstand scrutiny under Missouri law.

### (a) The alleged statement made by Defendant Palumbo was not published.

45. First and foremost, as pled, the alleged defamatory statement made by Defendant Palumbo was not published.

46. Plaintiff bases his defamation claim on, at best, an intra-corporate communication and, at worst, a communication to himself.[1] Missouri, however, has long recognized the intra-corporate immunity rule in defamation torts. In this regard, under well-established Missouri law, such a communication does not constitute "publication."

47. The intra-corporate immunity rule rests on the premise that a corporation can only communicate through its employees and, therefore, communications between employees of the same corporation in the regular course of business (including personnel matters) are not publications to third persons as required to prove a defamation tort. *Hellesen v. Knaus Truck Lines, Inc.*, 370 S.W. 2d 341, 344 (Mo. 1963); *Washington v. Thomas*, 778 S.W. 2d 792, 796 (Mo. App. 1989) (holding that the defendant's letter containing a statement that the plaintiff threatened another person with bodily harm with a loaded weapon was not published by placing it in the personnel file to which multiple non-essential employees had access).

48. The policy rationale behind this rule is simple: businesses have a need to communicate "concerning the performance and conduct of employees in the due and regular course of the corporate business," because a "corporation has an interest to see that business runs efficiently." *Lovelace v. Long John Silver's, Inc.*, 841 S.W. 2d 682, 685 (Mo. App. 1992).

---

[1] Plaintiff alleges that an unnamed employee contacted Plaintiff alleging that he was "stealing accounts from CardConnect, according to Renny Palumbo . . . ." (First Am. Pet. at ¶ 210). Plaintiff states that "the first known publication in Missouri was to Plaintiff." (First Am. Pet. at ¶ 213).

49. In *Hellesen*, the court held that a document written and placed in a company file was not "published," although presumably read by secretaries, file clerks, and other corporate personnel. *Hellesen*, 370 S.W. 2d at 344. Expanding on *Hellesen*, in *Lovelace*, the Missouri Court of Appeals held that employee statements made to management concerning the plaintiff fell within the intra-corporate immunity rule and such communications did not meet the publication requirement for defamation. *Lovelace*, 841 S.W. 2d at 684. Similarly, in *Blake v. May Department Stores Company*, the Missouri Court of Appeals held that the supervisor's communications to the company's Human Resources Vice President regarding a complaint involving the employee were not "published" because they fell within the scope of the intra-corporate immunity rule for defamation. 882 S.W. 2d 688, 6901 (Mo. App. 1994).

50. Here, Plaintiff has not pled that the alleged statement(s) were "published" to any third party outside of the corporate structure. Rather, Plaintiff alleges that an employee of CardConnect heard from Renny Palumbo, the sales manager for CardConnect, that Plaintiff was stealing accounts from CardConnect. Following *Blake*, *Lovelace*, and *Hellesen*, it is clear that the alleged statement was not "published" because it falls within the intra-corporate immunity rule and that under no set of facts can such a statement constitute defamation. Accordingly, taking the allegations in Plaintiff's First Amended Petition as true, Plaintiff cannot state a claim for defamation against Defendant Palumbo.

### (b) **Plaintiff is unable to provide the exact alleged defamatory words.**

51. It is well settled that a plaintiff attempting to assert a claim for defamation must set forth in his initial pleading the actual words considered to be defamatory. *Carey v. Pulitzer Publ'g Co.*, 859 S.W. 2d 851, 854 (Mo. App. 1993) (holding that plaintiff properly faced dismissal of his petition because it "failed to present the allegedly libelous words with particularity which he claims

defamed him" where the petition merely summarized statements such as plaintiff "attacked Senator Bond on labor at the political forum"); *Shurn v. Monteleone*, 769 S.W. 2d 188, 191 (Mo. App. 1989) (same).

52. The rationale behind this rule is that the court can determine up front whether the words are potentially actionable as to Plaintiff. *See Missouri Church of Scientology v. Adams*, 543 S.W. 2d 776, 777 (Mo. 1976) (holding that allegations of the plaintiff's interpretation of news articles attached as exhibits were insufficient).

53. Summaries or paraphrases of the allegedly defamatory statements are insufficient. *Carey*, 859 S.W. 2d at 854. If a petition does not specifically allege those statements claimed to be defamatory, the court should dismiss the claim for failure to state a claim on which relief may be granted. *Id.*; *State ex rel. Diehl v. Kintz*, 162 S.W. 3d 152, 158 (Mo. App. 2005) (finding dismissal of a defamation claim appropriate because Missouri requires fact-specific pleading and the petition was unclear as to the alleged defamatory statements).

54. Here, Plaintiff has now had two opportunities to plead the exact defamatory words and has failed to do so.[2]

55. It is clear that Plaintiff is unable to attribute validly published defamatory statements to Defendant Palumbo.

> **3. Even if the Court Does Not Construe the Date that the First Amended Petition was Filed as the Commencement of a New Action, Because the First Amended Petition Fundamentally Altered the Nature of the Case, the Revival Doctrine Supports Removal**

---

[2] Rather than stating the words actually spoken, Plaintiff in both his Initial Petition and First Amended Petition, merely paraphrases the alleged defamatory statements. (*See* Petition at ¶ 2, Count II, First Am. Pet. at ¶ 210.) Plaintiff's allegations in this regard are inadequate under Missouri Rule of Civil Procedure 55.05 and Missouri case law.

56. The revival doctrine is a judicially created doctrine, which "'provides that a lapsed right to remove an initially removable case within thirty days is restored when the amended complaint is amended so substantially as to alter the character of the action and constitute essentially a new lawsuit'" *RJO Invs., Inc. v. Crown Fin., LLC*, No. 5: 18-CV-05015-TLB, 2018 U.S. Dist. LEXIS 76114, at *7 (W.D. Ark. May 2, 2018) (quoting *Johnson v. Heublein, Inc.*, 227 F.3d 236, 241 (5th Cir. 2000). While the Eighth Circuit has not addressed whether the revival doctrine is a viable doctrine, the district courts in the Eighth Circuit have recognized and applied the revival doctrine's analysis. *See, e.g., RJO Invs., Inc.*, 2018 U.S. Dist. LEXIS 76114, at *7. Indeed, the Western District of Missouri has even considered the applicability of the revival doctrine *sua sponte*. *See RLR Invs., LLC v. City of Pleasant Valley*, No. 4:18-CV-01003-DGK, 2019 U.S. Dist. LEXIS 57634 (W.D. Mo. April 3, 2019).

57. The applicability of the Revival Doctrine depends on the following factors:

(1) whether the case was initially removable at the time the original complaint was filed in state court; and (2) whether the character of the action was fundamentally altered by a more recent amendment to the original complaint, or the plaintiff deliberately misled the defendant about the nature of the claims until some time after the expiration of the 30-day removal period. Both factors must be established.

*RJO Invs., Inc.*, 2018 U.S. Dist. LEXIS 76114, at *8 (internal citation omitted).

58. As discussed above, Defendant Palumbo is improperly joined because Plaintiff's claims against him do not arise out of the same "transaction, occurrence, or series of transactions or occurrences" as the claims against the other Defendants. As a consequence, this action was initially removable, satisfying the first factor in the revival doctrine's analysis.

59. The second factor in the revival doctrine's analysis is also satisfied in this case because the character of this action was fundamentally altered by the First Amended Petition. As discussed above, Plaintiff's Initial Petition was a 32-page, 161-paragraph, 6-count Petition for

13
Case 4:19-cv-00686-RK   Document 1   Filed 08/29/19   Page 13 of 18

Damages and Declaratory Relief ("Petition") against corporate Defendants CardConnect, LLC, CardConnect, Corp., First Data Corporation, and individual Defendant, Renny Palumbo.

60. Plaintiff's Initial Petition alleged claims against the corporate Defendants for equitable disgorgement, underpayment of wages, alleged violations of the Missouri Service Letter Statute, MO Rev Stat § 290.110 (2019), and the Kansas Statutory Employee Protection Act. Plaintiff's petition also alleged a single claim against the individual Defendant Renny Palumbo for defamation premised on unspecified defamatory statements that were allegedly made by Defendant Palumbo. The crux of the Initial Petition's allegations against the corporate Defendants proceeded under an employment law theory of liability.

61. When Plaintiff filed his First Amended Petition, he for the first time added Defendant Fiserv as a new corporate Defendant and new party to this action. The First Amended Petition does far more than simply add Fiserv as a new Defendant in this action. In fact, in addition to adding new Defendant, Fiserv, Plaintiff's First Amended Petition also added a substantial number of new allegations against the corporate Defendants, as well as additional causes of action and now constitutes 68 pages, 307 paragraphs, and 10 counts.

62. Moreover, the crux of the First Amended Petition's allegations against the corporate Defendants now proceed on an *independent contractor* theory of liability as opposed to the *employment* theory set forth in the initial Petition.

63. Thus, Plaintiff's entire theory of liability has been drastically changed through the First Amended Petition. This qualifies as fundamentally altering the character of this action and satisfies the second factor of the revival doctrine's analysis. *See MG Bldg. Materials, Ltd. v. Paychex, Inc.*, 841 F. Supp. 2d 740, 746 (W.D.N.Y. 2012) (recognizing that "[a]n amendment to a pleading that merely changes a date or the spelling of a party's name, for example, would clearly

not revive the defendant's right to remove, *while an amendment that radically and thoroughly transforms the entire factual and legal basis for the action would*.") (emphasis added).

### 4. Even if Defendant Palumbo were Properly Joined, He was a Diverse Defendant at the Time the First Amended Petition was Filed.

64. As explained above, Defendant Palumbo moved to Illinois in May 2019 and Plaintiff did not file the First Amended Petition against Defendant Fiserv until July 30, 2019.

65. At the time Defendant Fiserv was brought into this action by Plaintiff there was complete diversity among the parties.

66. "[A] federal court must honor state court rules governing commencement of civil actions when an action is first brought in state court and then removed to federal court." *Winkels v. George A. Hormel & Co.,* 874 F.2d 567, 570 (8th Cir. 1989). Under Missouri Supreme Court Rule 53.01, "[a] civil action is commenced by filing a petition with the court." Where, however, an amended petition adds a new party to the case, the Supreme Court of Missouri has held that "commencement" of the action as between the plaintiff and the new defendant occurs at the time of the amendment. *Byrnes v. Scaggs,* 247 S.W.2d 826, 830 (Mo. 1952) ("It is the general rule, where defendants are brought into an action for the first time upon the filing of an amended or supplemental pleading, that the filing of the amended pleading constitutes the commencement of the action in so far as the new defendant is concerned . . . ."); *Mackey v. Smith,* 438 S.W.3d 465, 472 (Mo. App. 2014) ("'commencement' of an action as to a particular party occurs when that party is first added to the lawsuit").

67. Accordingly, the Court should treat the date that the First Amended Petition was filed as the "commencement" of a new action between Plaintiff and Defendant Fiserv.

### C. Defendants Have Satisfied the Other Procedural and Venue Requirements for Removal

68. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which allows a defendant to remove a case within thirty days of receipt of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.

69. Plaintiff's First Amended Petition, which was the first pleading in the State Court Action as against Defendant Fiserv was filed on July 30, 2019.

70. Defendant Fiserv accepted service of the First Amended Petition on August 28, 2019.

71. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

72. Because Defendant Fiserv was not added as a party to this action until July 30, 2019, pursuant to 28 U.S.C. § 1446(c)(1), this notice of removal is being filed within one year of the commencement of the action as to Defendant Fiserv.

73. Additionally, due to the applicability of the revival doctrine discussed above, as well as the bad faith conduct of Plaintiff in delaying this action, including Plaintiff's violation of numerous Court Orders requiring Plaintiff to serve Defendants with the Initial Petition and requiring Plaintiff to file and serve Defendants with an amended petition, this action is being timely removed by all Defendants pursuant to the bad faith exception contained in 28 U.S.C. § 1446(c)(1).

74. Although this Notice of Removal is being filed on behalf of all Defendants, Defendant Fiserv, as the last served Defendant, and in an abundance of caution, also has obtained consent to this removal from all other Defendants, including the improperly joined Defendant Palumbo. A copy of these consents are attached as **Exhibit 5**.

75. The Circuit Court of Jackson County is located within the Western District of Missouri. *See* 28 U.S.C. § 105(b)(1). Furthermore, Jackson County falls within the Western Division of the Western District of Missouri pursuant to Local Rule 3.2. Removal to this Court under section 1441(a) is proper because the Western District of Missouri is the "district and division embracing the place where such action is pending." 28 U.S.C. 1441(a).

76. In compliance with 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders received is attached as **Exhibit 2**.

77. Under 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiff's counsel and a copy is being filed with the Clerk of the Circuit Court of Jackson County.

## II.     CONCLUSION

Defendants notify this Honorable Court that they have removed this action from the Circuit Court of Jackson County, Missouri, to the United States District Court for the Western District of Missouri and give notice to Plaintiff and to the Circuit Court of Jackson County that the State Court Action shall proceed no further pursuant to 28 U.S.C. § 1446(d).

DATED: August 29, 2019                    Respectfully submitted,

                                          JACKSON LEWIS P.C.

                                          */s/ Kyle B. Russell*
                                          Kyle B. Russell, MO Bar #52660
                                          7101 College Blvd, Suite 1200
                                          Overland Park, KS 66210
                                          Telephone: (913) 981-1018
                                          Facsimile: (913) 981-1019
                                          Kyle.Russell@jacksonlewis.com

                                          **ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

On this 29th day of August 2019, I certify that a true and accurate copy of the foregoing was electronically filed via the Court's CM/ECF electronic filing system with a copy sent via electronic mail and via first-class U.S. mail, postage prepaid, to the following counsel of record:

Stephen Bradley Small, Esq.  MO #33097
LAW OFFICES OF
STEPHEN BRADLEY SMALL, LLC
Box 414678
Kansas City, MO 64141-4678
SBSESQ@aol.com

**ATTORNEY FOR PLAINTIFF**

*/s/ Kyle B. Russell*
**ATTORNEY FOR DEFENDANTS**